IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FIRUZ OLIMOVICH DANIEROV,

    Petitioner,

v.                                                                              No. 2:25-cv-01215-KG-KRS

KRISTI NOEM, et al.,

    Respondents.

## **TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Firuz Olimovich Danierov's Motion for a Temporary Restraining Order ("TRO"), Doc. 2. The Court held a hearing on the motion on December 17, 2025. Doc. 4. The Government has not filed a written response but appeared at the hearing. For the reasons below, the Court grants the motion and orders Mr. Danierov's immediate release.

*I.*    *Background*

Mr. Danierov, a citizen of Uzbekistan, entered the United States in June 2023. Doc. 2 at 2. Immigration and Customs Enforcement ("ICE") detained him and charged him as removable for entering the United States without admission or parole. *Id.* at 3. The Department of Homeland Security ("DHS") subsequently released Mr. Danierov on his own recognizance, determining that he posed neither a danger to the community nor a risk of flight. *Id.* On February 6, 2024, Mr. Danierov applied for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* Those applications remain pending. *Id.* For two years, Mr. Danierov has complied with all conditions of release. *Id.* He resides in New York, is lawfully employed as a truck driver, and has no criminal history. *Id.*

On November 17, 2025, DHS arrested Mr. Danierov while he was driving a commercial truck through a U.S. Border Patrol checkpoint in Texas. *Id.* Mr. Danierov remains detained at the

Otero County Processing Center in New Mexico. Doc. 1 at 1. Mr. Danierov claims he has "a clear right to a custody hearing by an IJ under 8 U.S.C. § 1226(a)(2)," and the Government's failure to provide him one "violates the Fifth Amendment's Due Process Clause." *Id.* at 12, 14. He therefore seeks a "TRO and a preliminary injunction prohibiting" the Government "from continuing to unlawfully detain him" while this habeas proceeding remains pending. Doc. 2 at 2.

II.     *Standard of Review*

A TRO "preserve[s] the status quo" before a final decision on the merits. *Resolution Trust v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). A petitioner seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest favor relief. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[A]ll four…factors" must "weigh in" the petitioner's favor, *Sierra Club. v. Bostick,* 539 Fed. App'x 885, 888 (10th Cir. 2013), but "[t]he likelihood-of-success and irreparable-harm…are the most critical." *People's Trust Fed. Credit Union v. Nat'l Credit Union*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018). "[R]egardless of whether or not notice is provided," a TRO "should not exceed" 28 days "absent consent of the opposing party." *Isler v. New Mexico Activities*, 2010 WL 11623621, at *3 (D.N.M.).

III.    *Analysis*

For the reasons below, (A) Mr. Danierov is likely to succeed on his claim, (B) he will suffer irreparable harm absent a TRO, and (C) equities and public interest favor relief.

    A.      *Mr. Danierov is likely to succeed on the merits of his petition.*

Mr. Danierov has established a likelihood of success on the merits of his (1) statutory claim and (2) Fifth Amendment due process claim.

        1.      *Mr. Danierov is likely to succeed on his statutory claim.*

2

Mr. Danierov is likely to succeed on his claim that his detention is governed by 8 U.S.C. § 1226(a). The Immigration and Nationality Act ("INA") establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." The "provision mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.).

By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." § 1226(a). "Under federal regulations, noncitizens detained under this second detention regime are entitled to individualized bond hearings at the outset of detention." *Pu Sacvin*, 2025 WL 3187432, at *1. "Noncitizens who entered the country years earlier are not…seeking admission and therefore fall under" § 1226(a), "rather than § 1225(b)(2)(A)." *Id.* at *3.

Here, Mr. Danierov entered the United States in 2003 and was released after DHS determined he posed neither danger to his community nor a risk of flight. Doc. 2 at 2–3. Furthermore, he was rearrested within the interior of the United States—at a border checkpoint in Texas. *Id.* Because Mr. Danierov had already affected an entry and was not seeking admission at the time of his arrest, § 1226(a) likely governs his detention. Mr. Danierov has therefore demonstrated a strong likelihood of success on his statutory claim.

      2.     *Mr. Danierov is likely to succeed on his Due Process claim.*

Mr. Danierov is also likely to succeed on his claim that his redetention violates the Fifth Amendment's Due Process Clause. Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the

procedures used to deprive that interest "accord with the Constitution." *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.).

Here, Mr. Danierov has a protected liberty interest. Once released from immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Cuya-Priale v. Castro*, 2025 WL 3564145, at *2 (D.N.M.) (Gonzales, J.). Mr. Danierov's prior release allowed "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Indeed, for the past two years, Mr. Danierov has lived in New York and worked as a truck driver. Doc. 2 at 3.

Mr. Danierov was also entitled to procedural safeguards before he was redetained. In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To start, Mr. Danierov's private interest in remaining free from detention is substantial. "Freedom from imprisonment…lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

There is also a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before revoking release. *Cuya-Priale*, 2025 WL 3564145, at *2. Mr. Danierov was redetained after two years without a bond hearing. Doc. 2 at 3. No assessment was made as to whether any material facts had changed, creating a substantial risk of erroneous deprivation of his liberty interest.

Finally, the Government's interest in detaining Mr. Danierov without a hearing is limited. Mr. Danierov complied with all conditions of release for two years, Doc. 2 at 3, and the administrative burden of providing a bond hearing is minimal. *See Cuya-Priale*, 2025 WL 3564145, at *3 (the "cost of providing a bond determination is not terribly burdensome"). Mr. Danierov has therefore demonstrated he is likely to succeed on his due process claim.

B. *Mr. Danierov will face irreparable harm without injunctive relief.*

Mr. Danierov also proved that his detention caused irreparable harm, as "infringement of a constitutional right" is per se irreparable harm. *Free the Nipple*, 916 F.3d at 805.

C. *The equities and public interest favor relief.*

Any burden on the Government to release Mr. Danierov from custody is minimal compared to the harm that Mr. Danierov is suffering. While the Government has an interest in securing Mr. Danierov's appearance at immigration proceedings, detention has been unnecessary to carry out that interest—Mr. Danierov complied with his release conditions for two years. Doc. 2 at 3. "Faced with a choice between minimally costly procedures and preventable human suffering," the "balance of hardships tips decidedly in [P]etitioner's favor." *Cuya-Priale*, 2025 WL 3564145, at *3. The public interest also weighs in Mr. Danierov's favor; it is "not in the public's interest to allow unexplained detention." *Id.*

IV. Conclusion

Mr. Danierov has satisfied the procedural requirements for issuance of a TRO. Because the Government appeared through counsel at the December 17 hearing, it received sufficient notice of Mr. Danierov's motion. *See* Fed. R. Civ. P. 64 (b) (1) ("[W]ritten or oral notice" suffices to provide "the adverse party" notice of a TRO). This Order restores and preserves the status quo ante pending further proceedings. IT IS THEREFORE ORDERED that:

1. Mr. Danierov's TRO motion (Doc. 2) is GRANTED.

5

2. The Government is ORDERED to release Mr. Danierov within 24 hours of this order.

3. Upon release, the Government shall not impose any post-release monitoring or supervision that was not in place prior to his redetention.

4. The Government is restrained from redetaining Mr. Danierov unless it demonstrates, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Mr. Danierov is a danger or flight risk.

5. The Government shall file an answer no later than seven (7) days from the date of this Order addressing the merits of the habeas petition. Mr. Danierov may file a reply within seven (7) days thereafter.

6. Upon completion of briefing, the Court will schedule a hearing on the habeas petition.

7. This order shall last for 28 days for good cause shown. *See* Fed. R. Civ. P. 65(b)(2).

8. Given the important constitutional rights at stake for Mr. Danierov, the Court finds that no bond is required. *See Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (providing district courts with "wide discretion under Rule 65(c)" to determine "whether to require security").

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.