IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FIRUZ OLIMOVICH DANIEROV,

    Petitioner,

v.                                                    No. 2:25-cv-01215-KG-KRS

KRISTI NOEM, et al.,

    Respondents.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Firuz Olimovich Danierov's Petition for a Writ of Habeas Corpus, Doc. 1, and the Government's Motion to Dismiss, Doc. 9. On December 17, 2025, the Court held a hearing and issued a Temporary Restraining Order requiring the Government to release Mr. Danierov. Doc. 6. That order expires on January 14, 2026. *Id.* Because Mr. Danierov's challenge presents a purely legal question, no further hearing is necessary. *See* 28 U.S.C. § 2243. For the reasons below, the Court denies the Government's Motion to Dismiss, Doc. 9, and grants Mr. Danierov's Petition, Doc. 1.

I.    *Background*

Mr. Danierov, a citizen of Uzbekistan, entered the United States in June 2023. Doc. 2 at 2. Immigration and Customs Enforcement ("ICE") detained him and charged him as removable for entering the United States without admission or parole. *Id.* at 3. The Department of Homeland Security ("DHS") subsequently released Mr. Danierov on his own recognizance, determining that he posed neither a danger to the community nor a flight risk. *Id.* On February 6, 2024, Mr. Danierov applied for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* Those applications remain pending. *Id.* For two years, Mr.

1

Danierov has complied with all conditions of release. *Id.* He resides in New York, is lawfully employed as a truck driver, and has no criminal history. *Id.*

On November 17, 2025, DHS arrested Mr. Danierov while he was driving a commercial truck through a U.S. Border Patrol checkpoint in Texas. *Id.* He claims that, before he is detained, he has "a clear right to a custody hearing by an IJ under 8 U.S.C. § 1226(a)(2)," and the Government's failure to provide him one "violate[d] the Fifth Amendment's Due Process Clause." *Id.* at 12, 14. The Government argues that Mr. Danierov is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but, if a bond hearing is held, Mr. Danierov bears the burden of demonstrating eligibility for release. Doc. 9 at 2, 15.

II.     *Standard of Review*

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available under § 2241 if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

III.    *Analysis*

The Court finds that (A) 8 U.S.C. § 1226 governs the Government's authority to detain Mr. Danierov; (B) detention without a bond hearing violates due process; and (C) the proper remedy is a bond hearing at which the Government bears the burden of proof.

   A.     *Section 1226 governs Mr. Danierov's detention.*

The Immigration and Nationality Act ("INA") establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Section 1225(b)(2)(A) applies to "applicant[s] for

admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." The "provision mandates detention and affords no bond hearing." *Pu Sacvin*, 2025 WL 3187432, at *1. By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." § 1226(a). "Under federal regulations, noncitizens detained under this second detention regime are entitled to individualized bond hearings at the outset of detention." *Pu Sacvin*, 2025 WL 3187432, at *1.

Consistent with the overwhelming majority of district courts to consider the issue, the Court finds that § 1226 governs here. *See Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y.) (collecting over 300 consistent district court decisions nationwide). The Court begins with the plain text and structure of §§ 1225 and 1226. Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted or who arrives in the United States," while § 1225(b)(2)(A) applies only to those "seeking admission." The statute thus distinguishes between the broader category of "applicants for admission" and the narrower subset "seeking admission," which refers to noncitizens who have not "effected an entry" into the United States. *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Noncitizens who entered the country years earlier are not "seeking admission" and fall under § 1226 rather than § 1225(b)(2)(A). *Pu Sacvin*, 2025 WL 3187432, at *3.

Mr. Danierov entered the United States in 2003 and was released after DHS determined he posed neither danger to his community nor a risk of flight. Doc. 2 at 2–3. He was rearrested within the interior of the United States, at a border checkpoint in Texas. *Id.* Because Mr. Danierov had already affected an entry and was not seeking admission at the time of his arrest, § 1226(a) governs his detention.

B.     *Mr. Danierov's detention violates his right to due process.*

Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the procedures used to deprive that interest "accord with the Constitution." *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.). Mr. Danierov has a protected liberty interest. Once released from immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Cuya-Priale v. Castro*, 2025 WL 3564145, at *2 (D.N.M.) (Gonzales, J.). Mr. Danierov's prior release allowed "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Indeed, for the past two years, Mr. Danierov has lived in New York and worked as a truck driver. Doc. 2 at 3.

Mr. Danierov was entitled to procedural safeguards before he was redetained. In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To start, Mr. Danierov's private interest in remaining free from detention is substantial. "Freedom from imprisonment...lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

There is also a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before revoking release. *Cuya-Priale*, 2025 WL 3564145, at *2. Mr. Danierov was redetained after two years

4

without a bond hearing.  Doc. 2 at 3.  No assessment was made as to whether any material facts had changed, creating a substantial risk of erroneous deprivation of his liberty interest.

Finally, the Government's interest in detaining Mr. Danierov without a hearing is limited.  Mr. Danierov complied with all conditions of release for two years, Doc. 2 at 3, and the administrative burden of providing a bond hearing is minimal.  *See Cuya-Priale*, 2025 WL 3564145, at *3 (the "cost of providing a bond determination is not terribly burdensome").  Therefore, the Government has violated Mr., Danierov's due process right.

C.      *The remedy is a bond hearing where the Government bears the burden of proof.*

The proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Mr. Danierov is a flight risk or danger to the community.  Although "under normal circumstances, the burden" at a § 1226 hearing "is on the noncitizen" to show that detention is unwarranted, Mr. Danierov's "unlawful detention in violation of his constitutional rights shifts that burden to the Government."  *Pu Sacvin*, 2025 WL 3187432, at *3.  A noncitizen's "strong private interest in being free from civil detention" outweighs the Government's "comparatively minimal burden to justify custody."  *Id.*

IV.     Conclusion

For the reasons stated above, the Court denies the Government's Motion to Dismiss, Doc. 9, and grants Mr. Danierov's Petition, Doc. 1.  Mr. Danierov is currently at liberty under this Court's Temporary Restraining Order.  *See* Doc. 6.  The Court orders the Government to provide Mr. Danierov with a bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge within seven (7) days of the date of this Order.  At that hearing, the Government bears the burden of justifying Mr. Danierov's redetention by clear and convincing evidence.  If the Government fails to hold a bond hearing, Mr. Danierov shall remain at liberty.

The Court also orders the Government to file a status report within ten (10) days of the date of this Order certifying compliance. The status report must include whether the bond hearing occurred, whether bond was granted, and, if bond was denied, the reasons for the denial.

IT IS SO ORDERED

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.